**W. Raymond BARRETT et al., Respondents,**

v.

**Harold JENKINS, d/b/a Jenkins Construction Company, Appellant.**

**No. 35101.**

Missouri Court of Appeals,
St. Louis District.

April 30, 1974.

Motion for Rehearing or Transfer to Supreme Court Denied June 12, 1974.

Application to Transfer Denied
July 22, 1974.

Sullivan & Watkins, Clayton, for respondents.

Richard M. Stout, Kirkwood, for defendant.

CLEMENS, Judge.

Plaintiff home-buyers sued defendant seller-contractor for damages from alleged construction defects. A jury awarded plaintiffs $10,000 and defendant appeals from the ensuing judgment. We reverse and remand.

The primary issue is plaintiffs' theory of recovery—did the court improperly submit plaintiffs' case on the theory of an implied warranty of fitness?

Plaintiffs pleaded defendant contracted to sell them a specified lot and build thereon a five-bedroom dwelling for $80,813; construction was to accord with a written contract, to be done in a workmanlike manner and to be "fit for the purpose sold, mainly as a home for plaintiffs." Plaintiffs alleged defendant "breached the aforesaid warranty" in 25 specified particulars and because of said "breach of warranties" plaintiff suffered $12,500 damages. Plaintiffs' theory is clarified by their verdict-directing instruction, a modified MAI 25.03—Breach of Warranty of Fitness for Particular use—calling for a belief that "plaintiffs reasonably relied upon defendant's judgment as to the quality of said home," and "the home sold plaintiffs was defective and not of reasonable quality." Plaintiffs' theory of recovery on an implied warranty of fitness was affirmed by the trial court's denial of defendant's after-trial motion on the specific ground that the case of Smith v. Old Warson Development Company, infra, controlled plaintiff's recovery.

We look to plaintiffs' evidence: Defendant Jenkins was a building contractor and owned the lot in question. After preliminary negotiations with Mr. Jenkins the Barretts employed an architect who prepared plans and specifications for the proposed home. At the suggestion of a friend who was a home-building contractor the Barretts supplemented the original plans by four typewritten pages of modified specifications.

On June 18, 1968 the parties incorporated these specifications into a written sales contract. Mr. Barrett added the vague handwritten phrase "1 year warranty" to the contract but plaintiffs had no evidence of an express warranty of fitness. Mr. Jenkins began building and the Barretts made weekly visits to check on Mr. Jenkins' progress. On January 17, 1969 the Barretts moved into the house and Jenkins' deed to the Barretts soon followed. A year later Mr. Barrett sent Mr. Jenkins a long list of complaints about construction, complaining principally that water leaked into the basement, the heating and air-conditioning systems were inadequate and the roof shingles were not of the proper type.

We conclude plaintiffs' pleading and evidence did not warrant the submission of their case on the theory of an implied warranty of fitness.

In Smith v. Old Warson Development Company, 479 S.W.2d 795 (Mo.Banc 1972),

the plaintiffs bought a *completed* home and discovered later that it was unfit because of a latent defect—a sinking slab floor caused by unworkmanlike compaction of the underlying soil—not capable of discovery by the purchaser. In overruling previous cases, the court ruled the defense of *caveat emptor* was inapplicable and held plaintiffs could recover on the theory of implied warranty since "the structural quality of a house, by its very nature, is nearly impossible to determine by inspection after the house is built, since many of the most important elements of its construction are hidden from view. The ordinary 'consumer' can determine little about the soundness of the construction but must rely upon the fact that the vendor-builder holds the structure out to the public as fit for use as a residence, and of being of reasonable quality."

The distinctions between our case and *Old Warson* are obvious. Here defendant's obligations were settled and became fixed in 1968 when he contracted to build the home in a workmanlike manner according to plaintiffs' plans and specifications, not upon any implied warranty of fitness arising when they bought the completed home in 1969.

In Sandy Hites Co. v. State Highway Comm., 347 Mo. 954, 149 S.W.2d 828 [1] (1941), the court said: "When the contract is to build a specified structure, according to another's plans, of course, the contractor does not insure that such plans and specifications are sufficient to obtain the result sought, and he should be paid if he did what he agreed to do." This principle was expanded in Interstate Folding Box Co. v. Hodge Chile Co., 334 S.W.2d 408 [5, 7] (Mo.App.1960), where plaintiff sued for the agreed price of paper cartons manufactured according to defendant's plans and specifications, but which turned out to be unfit for defendant's purposes. In affirming plaintiff's judgment this court held the availability of an implied warranty of fitness depends on facts showing the buyer relied on the seller's judgment in se-lecting a suitable article, and further held an implied warranty was precluded by the contract to manufacture in accord with agreed plans and specifications, saying: "Where a known, described, and definite article is ordered of a manufacturer, although it is stated by the purchaser to be required for a particular purpose, still if the known, described, and definite thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer."

Plaintiffs misconceived their remedy; it must arise from defendant's alleged breach of his contractual obligation, not from any implied warranty because there was no such warranty. Since the trial court submitted plaintiffs' case on a theory not supported by the evidence the judgment is reversed and the cause remanded for a new trial. See Brassfield v. Sears, 421 S.W.2d 321 [1, 2] (Mo.1967).

SMITH, P. J., and GUNN, J., concur.